**JOHNSON & JOHNSON, INC.,**
**Plaintiff-Appellant,**

v.

**WALLACE A. ERICKSON & CO.,**
**Defendant-Appellee.**

**No. 79-2483.**

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1980.

Decided Aug. 1, 1980.

John A. Artz, Birmingham, Mich., for plaintiff-appellant.

Owen J. Murray, Chicago, Ill., for defendant-appellee.

Before SPRECHER and BAUER, Circuit Judges, and EAST, Senior District Judge.*

SPRECHER, Circuit Judge.

The question in this appeal is whether a district court has the power to compel the party-patentee in pending infringement proceedings to submit its patent to the Patent and Trademark Office and apply for a reissue patent prior to adjudication of the infringement action.

I

Johnson & Johnson, Inc. brought a patent infringement action against Wallace A. Erickson & Co., charging Erickson with infringement of Patent No. 3,926,906, which was issued on December 16, 1975 and relates to a two-paste composite dental restorative system used by dentists to fill cavities in teeth. Erickson filed an answer and counterclaim denying infringement, alleging invalidity of the patent on numerous grounds, including undisclosed prior art and inequitable conduct in the Patent Office, and seeking a declaratory judgment of invalidity and non-infringement. After some discovery by both parties, Erickson moved to compel Johnson & Johnson to apply to the Patent Office for a reissue patent.

Erickson's motion was denied by a magistrate whereupon Erickson petitioned the district court for review. The court reviewed the magistrate and granted Erick-

---

* Honorable William G. East, United States Senior District Judge for the District of Oregon, is sitting by designation.

son's motion to compel Johnson & Johnson to initiate reissue proceedings, meanwhile staying the judicial proceedings. Johnson & Johnson appealed.

Erickson moved to dismiss the appeal on the ground of non-finality of the appealed order. After complete briefing by both sides, this court took the motion for its decision at the time of decision on the merits.

## II

The Constitution grants Congress broad power to legislate to "promote the Progress of Science and useful Arts, by securing for limited Times to . . . Inventors the exclusive Right to their respective . . . Discoveries." Art. I, § 8, cl. 8. "The patent laws promote this progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 480, 94 S.Ct. 1879, 1885, 40 L.Ed.2d 315 (1974).

Congress has seen fit to grant to the patentee "for the term of seventeen years . . . the right to exclude others from making, using, or selling the invention throughout the United States . . . ." 35 U.S.C. § 154. The seventeen-year exclusion is a right and not a matter of grace or favor. *James v. Campbell*, 104 U.S. 356, 358, 26 L.Ed. 786 (1881). It is a property right, *Consolidated Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96, 24 L.Ed. 68 (1876), of which the patentee cannot be deprived without due process of law.

Congress has also declared that "[a] patent shall be presumed valid" and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282.

Finally, Congress has vested original and exclusive jurisdiction of civil actions relating to patents in the district courts. 28 U.S.C. § 1338(a). Consequently, "[t]he only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the Courts of the United States, and not in the department which issued the patent." *McCormick Harvesting Machine Co. v. Aultman*, 169 U.S. 606, 609, 18 S.Ct. 443, 444, 42 L.Ed. 875 (1898). See also *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 332, 91 S.Ct. 1434, 1444, 28 L.Ed.2d 788 (1971).

Congress has provided for the reissue of a patent "[w]henever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid . . . ." 35 U.S.C. § 251. However, in these instances it is clear that the application for reissue must be made by the inventor, see 35 U.S.C. §§ 111 & 251, or "by the assignee of the entire interest if the application does not seek to enlarge the scope of the claims of the original patent." 35 U.S.C. § 251. In order to effect a reissue, the patentee must not only apply for the reissue, but he must also surrender his original patent, 35 U.S.C. § 251, and the "surrender of the original patent shall take effect upon the issue of the reissued patent . . . ." 35 U.S.C. § 252. The reissue system as enacted by Congress is initiated by the patentee and is primarily for the patentee's benefit.

Congress has given the Commissioner of Patents and Trademarks the power and authority, subject to the approval of the Secretary of Commerce, to "establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent and Trademark Office." 35 U.S.C. § 6(a).

Consistent with law, the Commissioner has established regulations governing the procedure for reissues, including a requirement that reissue applications be signed and sworn to, or declaration made, by the inventor or by the assignee of the entire interest in the patent, and a statement that "[a] reissue will be granted to the original patentee, his legal representatives or assigns as the interest may appear." 37 C.F.R. § 1.172.

Effective March 1, 1977, the Commissioner amended 37 C.F.R. § 1.175, primarily to add sub-paragraph (a)(4). 42 Fed.Reg. 5588, 5594–95 (Jan. 28, 1977). As it affects

this appeal, section 1.175 reads in pertinent part:

(a) Applicants for reissue, in addition to complying with the requirements of the first sentence of § 1.65, must also file with their applications a statement under oath or declaration as follows:

\* \* \* \* \* \*

(4) When the applicant is aware of prior art or other information relevant to patentability, not previously considered by the Office, which might cause the examiner to deem the original patent wholly or partly inoperative or invalid, particularly specifying such prior art or other information and requesting that if the examiner so deems, the applicant be permitted to amend the patent and be granted a reissue patent.

(5) Particularly specifying the errors or what might be deemed to be errors relied upon, and how they arose or occurred.

(6) Stating that said errors, if any, arose "without any deceptive intention" on the part of the applicant.

One purpose of the 1977 amendment was to permit a patentee whose patent was challenged by prior art or charges of fraud on the Patent and Trademark Office, to initiate a reissue application and, at the same time, to seek a stay of judicial proceedings wherein the challenges were brought, until the Patent Office granted or rejected the reissue application. "New Patent Office Rules May Aid Patent Litigation, Interview with Chief Judge Howard T. Markey, Court of Customs and Patent Appeals." 9 *The Third Branch*, No. 9, at pp. 7–8 (September 1977). In order to avoid undue delay by this reference to the Patent Office in the midst of litigation, the Commissioner reaffirmed that the application, like all reissue applications, would be given priority in the Patent Office and would be treated "immediately." 983 Official Gazette, Patent and Trademark Office 24 (June 26, 1979). At the same time, the Commissioner emphasized that this special and expedited procedure did not excuse the patentee or assignee from complying carefully with the detailed application requirements set forth in 37 C.F.R. §§ 1.175(a)(4), (5) and (6). 977 Official Gazette 9–12 (December 12, 1978).

In summary, the 1977 amendments to the reissue regulations provide, as do the congressional reissue statutes, for initiation of reissue applications by the patentee or assignee. Consequently, some patentees have voluntarily applied for reissue patents, and where litigation involving those patents was on-going, the federal courts have granted stays pending the outcome of the Patent Office proceedings. See, e. g., *Fisher Controls Co. v. Control Components, Inc.*, 443 F.Supp. 581 (S.D.Iowa 1977); *Rohm and Haas Co. v. Mobil Oil Corp.*, 462 F.Supp. 732 (D.Del.1978).

The question in this appeal is whether a patentee can be compelled to initiate reissue proceedings in the Patent Office prior to, or as a condition precedent to, adjudication of the judicial proceedings.

### III

In addition to the court in this case, several district courts have compelled reissue proceedings, usually in company with the granting of a stay of judicial proceedings. See *Alpine Engineering Products, Inc. v. Automated Building Components, Inc.*, No. 77–6291–Civ–JLK (S.D.Fla. February 1, 1978); *K–Jack Engineering Co. v. Pete's Newsrack, Inc.*, No. 77–3184–HP (C.D.Cal. June 6, 1978); *Lee-Boy Mfg. Co. v. Puckett*, 202 U.S.P.Q. 573 (N.D.Ga. September 15, 1978); *Choat v. Rome Industries, Inc.*, 480 F.Supp. 387 (N.D.Ga.1979); *In re Yarn Processing Patent Validity Litigation*, 448 P.T.C.J. 7 (S.D.Fla. September 7, 1979); *Sheller Globe Corp. v. Mobay Chemical Corp.*, No. 78–70563 (E.D.Mich. January 24, 1980).

Other district courts have denied motions by alleged infringers to compel patentees to initiate reissue proceedings. See *RCA Corp. v. Applied Digital Data Systems*, 467 F.Supp. 99 (D.Del.1979); *Bielomatik Leuze & Co. v. Southwest Tablet Mfg. Co.*, 204 U.S.P.Q. 226 (N.D.Tex. August 22, 1979); *Antonious v. Kamata-Ri & Co.*, 204 U.S.P.Q. 294 (D.Md. October 2, 1979). The *RCA* and

*Antonious* cases were disposed of by the exercise of the district court's discretion to deny compelling action by the patentee. The court in *Bielomatik* concluded that:

> The court finds that the reissue procedure set out in the Patent Office regulations is designed for applicants who *voluntarily* submit their patents for reconsideration. While a court may stay proceedings during these voluntary proceedings, it has no authority to compel involuntary applications for reissue.

204 U.S.P.Q. at 226–27 [emphasis in original].

In the present case, one of the reasons advanced by the district court for compelling reissue procedure was that the Patent Officer's expedited processing would "insure a decision from the Patent Office in the minimal amount of time." A review of case law in this area shows, however, that reissue proceedings frequently cause major delays in the ultimate disposition of validity challenges.

In *PIC Inc. v. Prescon Corp.*, 485 F.Supp. 1302 (D.Del.1980), the facts leading up to a stay order were similar to the facts in this case. PIC brought an infringement suit; Prescon denied infringement and counterclaimed for a declaratory judgment that the patent was invalid for many reasons, including the existence of prior art and fraud on the Patent Office; the patentee voluntarily initiated reissue proceedings; the district court stayed the judicial proceedings on August 5, 1977.

In the Patent Office, the Examiner held against validity; the Board of Appeals reversed and upheld validity; and the patentee sought partial summary judgment on the issues of invalidity by reason of prior art and fraud in the procurement. The court denied the motion on March 5, 1980, holding itself not bound by the action of the Patent Office. Nothing whatsoever was accomplished, and the judicial proceedings were stayed and delayed for more than two-and-one-half years. Similar facts existed in *Komline-Sanderson Eng. Corp. v. Ingersoll-Rand Co.*, 485 F.Supp. 973 (D.Del. 1980), where a voluntary reissue was sought by the patentee on March 30, 1977. The reissue proceeding resulted in a finding of validity, but, almost three years later, the district court nevertheless held the patent invalid. However, the time-consuming and often futile seeking of reissue is only a sidelight of the question at issue here.

The involuntary compulsion upon the patentee to seek reissue in this case must be reversed for more fundamental reasons. A patent is a property right of exclusion for seventeen years and is presumed valid. A federal district court, after a trial on the merits, has the power to invalidate the patent. None of the district court cases cited above, nor Erickson in its briefs, has advised us by what authority a district court, prior to a trial on the merits, can require a patentee to submit and surrender his patent right to the Patent Office as a condition to pursuing his remedies against an alleged infringer. If such power were authorized, it would be a taking of property without due process of law. If such power were authorized to be exerted upon the discretion of the district court, it would raise problems of equal protection.

■ We do not reach these constitutional questions, however, because neither Congress nor the Commissioner of Patents and Trademarks has authorized reissue proceedings to be initiated by anyone other than the inventor or the assignees of the patent right. Congress has not yet deemed it proper to vest district courts with the power to initiate reissue proceedings, nor do courts possess inherent power which extends to compulsion upon patentees to seek reissue. The Commissioner can only proceed as far as Congress has declared, and he consequently has established in his regulations that patentees alone may initiate reissue proceedings.

■ The doctrine of primary jurisdiction does not apply. *RCA Corp. v. Applied Digital Data Systems, Inc., supra*, 467 F.Supp. at 101–03. The validity of patents is "within the conventional experience of judges . . . ." *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct.

492, 494, 96 L.Ed. 576 (1952). The question of the validity of any particular patent is a private issue between the patentee and alleged infringers, and not a public issue of industry-wide or regulatory concern. Cf. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976). Finally, the factual adjudications of the Patent Office, unlike most administrative factual adjudications, see, e. g., *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 305–06, 93 S.Ct. 573, 582–83, 34 L.Ed.2d 525 (1973), are not conclusive if supported by substantial evidence on the record considered as a whole. The ultimate question of patent validity is one of law and not subject to the clearly erroneous standard of review. *PIC Inc. v. Prescon Corp., supra*, 485 F.Supp. at 1313. Thus, the compelled reissue proceedings would have no effect whatever on the judicial process. To say that the reissue process would "strengthen" the rebuttal presumption of validity is to say nothing.

Undoubtedly, the 1977 amendments to the Commissioner's regulation serve a useful purpose and may conserve time, money and effort when a patentee voluntarily seeks reissue. The amendments cannot be construed, however, to create in district courts the power to compel patentees to surrender rights which are vested until divested by due process of law.

### IV

■ Jurisdictional questions are usually determined first, but the one here is more appropriately resolved last so that the dimensions of the question can better be assessed. The effect of the stay order in this case was to put the patentee "effectively out of court" for a protected and indefinite period, and possibly forever.[1] See *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n.2, 82 S.Ct. 1294, 1296 n.2, 8 L.Ed.2d 794 (1962); *Drexler v. Southwest Dubois School Corp.*, 504 F.2d 836, 838 (7th Cir. 1974). Consequently, the district court's order is a final order over which we have jurisdiction. See *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *Hines v. D'Artois*, 531 F.2d 726, 730–32 (5th Cir. 1976); *Civil Aeronautics Board v. Aeromatic Travel Corp.*, 489 F.2d 251, 253 (2d Cir. 1974).

The order compelling Johnson & Johnson to initiate reissue proceedings is reversed and the cause is remanded for further proceedings. Costs of appeal shall be borne by Erickson.

---

1. Presumably, one alternative to surrendering its patent would be for the patentee voluntarily to dismiss its patent infringement suit.